LAMBERT v. GEORGIA POWER COMPANY et al.

No. 10689.   FEBRUARY 10, 1936.

*Ezra E. Phillips,* for plaintiff.

*Colquitt, Parker, Troutman & Arkwright* and *Harwell & Barrett,* for defendants.

GRAHAM, Judge. The plaintiff filed his petition against the Georgia Power Company hereinafter referred to as the "company," the Amalgamated Association of Street and Electric Railway Employees of America, referred to as the "association," T. L. McBrayer, and Division 732 of Atlanta, Ga., of the Amalgamated Association of Street and Electric Railway Employees of America, referred to as the "local," for damages on account of his alleged wrongful discharge as an employee of the company, and of an alleged conspiracy of the defendants to effect his discharge and to prevent an investigation and arbitration to bring about his reinstatement in the employment of the company. He alleged that the association was the parent head of the labor union of which the local was a division, of which he was a member in good standing, and that he was employed by the company as a street-car operator under a certain contract between his local and the company; that while so employed, without fault on his part, he was discharged by the company; that McBrayer was a member of and president of the local; that the defendants conspired to bring about his discharge without cause, and to prevent an investigation and arbitration of the same for his reinstatement as such employee; and that an accredited officer of the company informed him that the company would not under any circumstances agree to reinstate him. Among many provisions for the benefit of the company and its employees (members of the local), which are unnecessary to a consideration of this case, the contract provided:

"Section III. The company agrees to meet and treat with duly accredited officers and committees that are elected or selected by the association upon all questions and grievances that may arise between the parties hereto during the life of this contract.

"Section IV. Any employee of the said company, a member of the association, who has been suspended, demerited, or discharged, shall have the right to have his case taken up by the officers or committee of the said association with the duly accredited officers of the company; and in such cases where, upon investigation, it is

found and mutually agreed to by the representatives of the company that such employee who has been suspended, demerited, or discharged was not at fault, he shall be reinstated to his former position, and paid the wages to which he would have been entitled had he continued in the company's employment during the period of suspension, or demerit, or discharge.

"Section v. When any disputes arise between the company and the association or its members, over which they can not mutually agree, the same shall be submitted to a board of arbitration composed of three disinterested persons, one arbitrator to be chosen by the company, one by the association, and the two arbitrators thus selected shall choose a third arbitrator. The board of arbitrators so constituted shall hear all evidence and arguments on the points in dispute, and the written decision of a majority of the members of the board of arbitration shall be final and binding on the parties hereto. The parties hereto shall each pay the arbitrator of its own selection, and they shall jointly pay the third arbitrator, and the other legitimate joint expenses of such arbitration, each party, however, paying its own expenses incurred in preparing and presenting its case. In the event that the said arbitrators shall fail to agree upon an umpire within ten days after their appointment, then the matter shall be referred back to the company and the association, who shall each appoint a new arbitrator in place of the one formerly named, and these new arbitrators shall proceed as above specified.

"Section vi. That the right to hire and discharge employees and the management of the properties of the company, cars, carshops, barns, railway lines and all other departments are reserved by the company and shall be vested exclusively in the company, and the company shall have the right to determine how many men it will employ or retain in said shops, barns, track construction, or maintenance work, and on the cars or in the transportation or other departments, together with the right to exercise full control and discipline in the interest of proper service and in the conduct of its business, except as expressly restricted in this contract.

. . "Section xxii. The association and its members agree that during the continuance of this contract there shall be no strikes or walkouts by the said association or its members. And the company agrees on its part that during the continuance of this con-

tract there shall be no lockouts of the said association or its members; it being the mutual desire of both parties hereto to provide, during the continuance of this contract, for uninterrupted public service. Nothing herein, however, is intended to prevent the resignation or discharge of any individual, all discharges being subject to review under the conditions and in the manner hereinbefore provided for."

The defendants demurred generally and specially on the ground that the petition failed to set out a cause of action, and did not contain a sufficient statement of facts to show a conspiracy. The plaintiff, by amendment which was allowed subject to demurrer, added to his petition count 2, in which he alleged that when in the employment of the Georgia Railway and Power Company, a predecessor of the defendant company, he was severely injured, and that in consideration of his not claiming damages against the predecessor company for his injury, the predecessor company entered with him into a contract of employment wherein it was agreed that he should have continuous and uninterrupted employment with said predecessor, its successors and assigns, during the remainder of his life, and that the defendant company succeeded to the obligation of the predecessor company; that under this contract he was employed by the company when, without fault on his part, he was discharged under and in pursuance of said conspiracy, to his injury, for which wrongful discharge he claimed damages. The defendants renewed their demurrers to the petition as amended, and objected to the amendment on the ground that it added a new and distinct cause of action. The court sustained the demurrers, and the plaintiff excepted.

█ There is no issue in the case as to the legality of the contract first declared on, between the company and the labor organization referred to as the association or local. The right of collective bargaining on the part of the association and its local for its members is not in issue. It is admitted that the contract which is the foundation of the action is valid. For the purposes of this case it is unnecessary to deal with the equitable prayers of the petition. The case turns on the question, did the company have the right, under the terms of the contract first declared on, to discharge the plaintiff without cause, and, after having so discharged him, to refuse to reinstate him in its employment? If

628

so, it follows that the petition did not allege a cause of action. Where parties enter into a contract, each is bound by its terms, and neither can claim any greater right under the contract than it gives. In this contract the company reserved and was expressly given the right to hire and discharge its employees; and it was also provided that "Nothing herein, however, is intended to prevent the resignation or discharge of any individual." As to both parties the time of the employment is indefinite. The company is not required to employ any particular individual or to retain him in its employment, if hired, for any given time, nor is the individual compelled to accept the employment, or, if hired, to remain therein any longer than he desires. The hiring under the contract is at will. The Code, § 66-101, provides: "An indefinite hiring may be terminated at will by either party." The company had a lawful right to. discharge the plaintiff. *Odom* v. *Bush,* 125 *Ga.* 184 (53 S. E. 1013) ; *Parks* v. *Atlanta,* 76 *Ga.* 828; *Clegg* v. *Whilley,* 114 *Ga.* 569 (40 S. E. 763) ; Baker *v.* Metropolitan Life Insurance Co., 23 Ky.·Law R. 1174 (64 S. W. 913, 55 L. R. A. 271) ; Boatright·*v.* Stenite Radio Corporation, 46 Fed. (2d) 385.

■ Granting .that the allegations of the plaintiff are sufficient to sustain the conclusion of conspiracy, there could be no actionable conspiracy growing out of the exercise, in a lawful manner, of the legal right to discharge the plaintiff. The company under the contract was authorized to discharge him, which was not illegally done; and, when considered as a whole, there is nothing in the contract requiring the company to re-employ or reinstate him, and there is no provision compelling him to serve the company. Inasmuch as the company had a right to discharge him, which was not done in an unlawful way, and the right to decline to re-employ him, his discharge and the refusal to investigate or to arbitrate the same for his reinstatement could not be the basis of such conspiracy as would afford the plaintiff a right of action for damages. "The averment of a conspiracy in the declaration does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pur-

suance of a conspiracy." ˙ *Woodruff* v. *Hughes,* 2 *Ga. App.* 361 (58 S. E. 551). See also *Camp* v. *Ætna Life Insurance Co.* 170 *Ga.* 46 (152 S. E. 41, 68 A. L. R. 1166); McGuire *v.* Gertsley, 204 U. S. 489 (27 Sup. Ct. 332, 51 L. ed. 581); Raycroft *v.* Tayntor, 68 Vt. 219 (35 Atl. 53, 33 L. R. A. 225, 54 Am. St. R. 882); Paine *v.* Western & Atlantic Railroad Co., 13 Lea (Tenn.) 507 (49 Am. R. 666); Rogers *v.* Western Union Telegraph Company, 124 Fed. 246.

■ There was no error in sustaining the demurrer to the amendment on the ground that it added a new and distinct cause of action. Assuming, which we do not now decide, that the amendment set forth a right of action, it was a new and distinct cause. The plaintiff first sued for breach of a contract of employment claimed to have been made through his local union with the Georgia Power Company. In his amendment he sought to recover for breach of contract of employment contended to have been made between him and a predecessor of that company. The contracts were separate and different in their terms and stipulations. The action for breach of one contract could not, over timely objection, be properly amended by setting up a breach of another and different contract. This would be adding a new and distinct cause of action, which, when objected to, is not permissible. Code, § 81-1303. *Lamar* v. *Lamar, Taylor & Riley Drug Co.,* 118 *Ga.* 850 (45 S. E. 671); *Rogers* v. *Atkinson,* 14 *Ga.* 320; *Milburn* v. *Davis,* 92 *Ga.* 362 (17 S. E. 286); *Singer Manufacturing Co.* v. *Armstrong,* 91 *Ga.* 745 (17 S. E. 1036); *Poss* v. *Hardin,* 181 *Ga.* 519 (182 S. E. 898). The ruling sustaining the demurrer to the amendment on the ground that it added a new and distinct cause of action, and dismissing the action on the ground that the petition failed to set forth a cause of action, was proper.

*Judgment affirmed. Justices Gilbert and Bell, and Judges Graham, Worrill, and Porter concur. Presiding Justice Beck was absent because of illness.*